*Ex parte* McCLUSKY.

*Ex parte* BROWN.

*Circuit Court, D. Arkansas.* October 14, 1889.)

**1. INDICTMENT AND INFORMATION—UNITED STATES LAWS—INFAMOUS OFFENSE.**
Under the laws of the United States, an infamous crime is one for which the statutes authorize the courts to award an infamous punishment. Its character for being infamous does not depend on whether the punishment ultimately awarded is an infamous one, but on whether it is in the power of the courts to award an infamous punishment, or whether the accused is in danger of being subjected to an infamous punishment.

**2. SAME.**
At the present day, sentence of imprisonment, either with or without hard labor, to a penitentiary where, by the rules of the prison or the laws of the state, hard labor is exacted of the prisoners, is an infamous punishment, and a crime which may be so punished is an infamous crime.

**3. SAME—LARCENY.**
Larceny, under the laws of the United States, is an infamous crime, and as such a party must, by article 5 of the amendments to the constitution of the United States, be charged with the offense by indictment or presentment of a grand jury, and cannot be legally charged by information.

**4. SAME.**
The indictment or presentment is necessary to give the court jurisdiction, and without one or the other the court has no jurisdiction to try.

**5. SAME—RIGHT TO BE CHARGED BY INDICTMENT—WAIVER.**
The right to be charged by indictment or presentment is a fundamental right of a party, which cannot be waived by him so as to deprive such party of afterwards setting up the want of jurisdiction in the court to try him.

6. SAME—HABEAS CORPUS.

In a criminal proceeding against a party he may waive certain things, but he cannot waive a fundamental right affecting the very jurisdiction of the court to try him. And, even though he may have attempted to waive such right, in a case where he has been found guilty and is imprisoned, he may sue out a writ of *habeas corpus*, and obtain his release, because he has been tried and convicted without due process of law, and against the constitution and laws of the United States.

(*Syllabus by the Court.*)

On application for *habeas corpus.*

These cases are alike, and they will be considered together. The petitioners state that on the —— day of September, 1889, an information was filed against them in the United States court for the Indian Territory, by the district attorney for the Indian territory, charging them with larceny; that said petitioners were afterwards arraigned before the said court; and that they then and there pleaded guilty to said charge; that afterwards judgment was entered on said plea of guilty, and by said judgment said McClusky was sentenced by said court to imprisonment in the jail at Muskogee, for the period of six months, where he now is; and said Kittie Brown was sentenced to the reform school at Washington, D. C., but, at the time of the filing of her petition for a writ, she was incarcerated in the jail at Muskogee. Each petitioner alleges, in his and her petition for the writ of *habeas corpus*, restraint of liberty, contrary to the constitution and laws of the United States, and upon that ground they pray the issuance of writs of *habeas corpus*, that they may be brought before this court, and relieved of their illegal imprisonment.

*M. M. Edmiston* and *Wm. H. H. Clayton*, U. S. Atty., for petitioners.

*Z. T. Walrond*, U. S. Atty., for the Indian country.

PARKER, J., (*after stating the facts as above.*) The *first* question is, could these petitioners be pronounced guilty of the crime of larceny, and sentenced to imprisonment for said crime, without being first charged with the crime by an indictment preferred by a legal grand jury? *Second.* If this is a fundamental requisite, is the right to insist upon its being complied with one that may be waived by a party, and is it waived by a plea of guilty to a charge of larceny presented by an information?

Article 5 of the amendments to the constitution provides that "no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury."

Is larceny an infamous crime? In *Ex parte Wilson*, 114 U. S. 426, 5 Sup. Ct. Rep. 935, the supereme court says:

"The question is whether the crime is one for which the statutes authorize the court to award an infamous punishment, not whether the punishment ultimately awarded is an infamous one."

In *Mackin* v. *U. S.*, 117 U. S. 352, 6 Sup. Ct. Rep. 777, the supreme court says:

"We cannot doubt that at the present day imprisonment in a state-prison or penitentiary, with or without hard labor, is an infamous punishment. It is not only so considered in the general opinion of the people, but it has been recognized as such in the legislation of the states and territories, as well as of congress."

It is not necessary, to make a punishment infamous, that the law shall require that the party should in terms be sentenced to hard labor. If, under the law, he may be sentenced to a state-prison or penitentiary, either with or without hard labor, his punishment is infamous. So says, in effect, *Ex parte Wilson, supra*, and so says, expressly, *Mackin v. U. S., supra*. And why is not this a reasonable construction, when it is a fact of common knowledge that, by the laws and rules governing all state-prisons and penitentiaries, hard labor is exacted of those who are sentenced there, and the supreme court, in *Ex parte Karstendick*, 93 U. S. 396, declares that all United States convicts are subject to the same discipline and treatment as convicts sentenced by courts of the state? The punishment is no less infamous when the convict may, under the law, be put to hard labor in the prison, although not in terms sentenced to it, than when the sentence, in obedience to the law, sets it out. The punishment is equally infamous in both cases. When the accused is in danger of being subjected to an infamous punishment, if convicted, the crime of which he is accused is an infamous crime. 114 U. S. 417, 5 Sup. Ct. Rep. 935; 117 U. S. 348, 6 Sup. Ct. Rep. 777; *U. S. v. Tod*, 25 Fed. Rep. 815. When is he in such danger? Why, in every case where the court, under the law, might sentence to a state-prison or penitentiary.

Section 5541 provides:

"In every case where any person convicted of any offense against the United States is sentenced to imprisonment for a period longer than one year, the court by which the sentence is passed may order the same to be executed in any state jail or penitentiary within the district or state where such court is held, the use of which jail or penitentiary is allowed by the legislature of the state for that purpose."

Section 5546 provides that—

"All persons who have been, or who may hereafter be, convicted of crime, by any court of the United States, whose punishment is imprisonment in a district or territory where at the time of conviction there may be no penitentiary or jail suitable for the confinement of convicts, or available therefor, shall be confined during the term for which they may have been or may be sentenced in some suitable jail or penitentiary in a convenient state or territory, to be designated by the attorney general."

Of course, when so designated, it becomes the duty of the court to sentence the prisoners to the place so designated. The only difference between these two sections relates to the class of cases where the judge may designate the place of imprisonment, and the class where the attorney general may designate such place. The attorney general may designate the place of imprisonment in all cases where there is not a suitable jail or penitentiary for the confinement of prisoners in a district or territory where they may be convicted. Suppose the judge would, in a case where he can designate, fail to designate a state jail or penitentiary, and send the parties, as he has done with McClusky in this case, to a local jail, would that take away the infamous character of the offense? If this were so, the same act might be an infamous crime in one district and not an infamous crime in another; its character depending on whether the judges

designated, or failed to designate, a state-prison or penitentiary. So with all cases where persons are to be confined in state-prisons designated by the attorney general. If he would designate a state penitentiary as the place of confinement of persons convicted in one district, and fail to do so in another district, the same crime would be infamous in one case, while in the other it would be entirely free from that character. The statement of these propositions shows they are not true. Neither the judge nor the attorney general can, at their pleasure, determine the infamous character of an offense. The test is whether the statutes authorize the court to award an infamous punishment, not whether the punishment ultimately awarded is infamous,—whether the accused is in danger of being subjected to an infamous punishment. If convicted of larceny he is, under the power of the attorney general to designate the place of imprisonment, in such danger. By the rule established by the supreme court in *Ex parte Wilson* and *Mackin* v. *U. S.*, larceny becomes an infamous offense. It was infamous at the common law, not only because it was a crime which exhibited particular turpitude and baseness of character, but because of the nature of its punishment as well. Up to 7 & 8 Geo. IV., it was, if the property stolen was over the value of 12 pence, punishable with death. This was infamous punishment. Then by the above statute it was punished with transportation to a penal colony, or two years' imprisonment, and whipping, if a male, and that was certainly infamous punishment. This was the condition of the common law of England at the time of the adoption of the fifth amendment to the constitution. I conclude that the crime of larceny is an infamous crime, and the person accused must be so accused by an indictment or presentment of a grand jury.

Can a party waive the right to be charged by indictment or presentment; and if so, is his plea of guilty to a charge contained in an information not authorized by the law a waiver of his right to be accused by an indictment? A party cannot waive a constitutional right when its effect is to give a court jurisdiction. Hawes, Jur. §§ 11, 12. The fifth amendment to the constitution, that no person shall be held to answer for a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury, provides for a requisite to jurisdiction. *Ex parte Bain*, 121 U. S. 1, 7 Sup. Ct. Rep. 781; *Parkinson* v. *U. S.*, 121 U. S. 281, 7 Sup. Ct. Rep. 896. If the crime is of such a nature that an indictment to warrant a prosecution of the crime is required by the law, the court has no jurisdiction to try without such indictment. Can a party consent to jurisdiction? Can he, by an agreement with the government, surrender his liberty for a stipulated time? Has any person the right to surrender his liberty in violation of a fundamental right, secured to him for the protection of the liberty of such person by the fifth amendment to the constitution of the United States? No man or no power has the right to take away another's liberty, even though with consent, except by due process of law. Due process of law, in a case like the one charged against petitioners, means compliance by the government with a fundamental requisite, such

as that the party shall be charged with the crime in the way provided by the constitution and laws of the United States. Liberty, under such constitution and laws, is an inalienable prerogative, of which no man by mere agreement can divest himself. Any divestiture not occurring by due process of law is null. 1 Whart. Crim. Law, (9th Ed.) § 145. Mr. Cooley, in Constitutional Limitations, (page 182,) says: "A party may consent to waive rights of property, but the trial and punishment for public offenses are not within the province of individual consent or agreement." This means that, by individual consent or agreement, fundamental rights cannot be waived. The substantial constitution of the legal tribunal and the fundamental mode of its proceeding are not within the power of the parties. The court of appeals of New York, in *Cancemi* v. *People*, 18 N. Y. 136, said:

"Criminal prosecutions involve public wrongs, a breach and violation of public rights and duties, which affect the whole community, considered as a community, in its social and aggregate capacity. The penalties or punishment, for the enforcement of which they are a means to the end, are not within the discretion or control of the parties accused; for no one has a right, by his own voluntary act, to surrender his liberty, or part with his life. The state—the public—have an interest in the preservation of the liberties and lives of the citizens, and will not allow them to be taken away without due process of law, when forfeited, as they may be as a punishment for crimes. Criminal prosecutions proceed on the assumption of such a forfeiture, which, to sustain them, must be ascertained and declared as the law has prescribed. These considerations make it apparent that the right of a defendant, in a criminal prosecution, to affect, by consent, the conduct of the case, should be made more limited than in civil actions. It should not be permitted to extend so far as to make radical changes in great and leading provisions, as to the organization of the tribunals, or the mode of proceeding prescribed by the constitution and the laws. Effect may justly and safely be given to such consent in many particulars, and the law does, in respect to various matters, regard and act upon it as valid. Objections to juries may be waived. The court may be substituted for triers to dispose of challenges to juries. Secondary, in place of primary, evidence may be received. Admissions of facts are allowed; and, in similar particulars, as well as in relation to mere formal proceedings generally, consent will render valid what, without it, would be erroneous. A plea of guilty to any indictment, whatever may be the grade of the crime, will be received and acted upon, if it is made clearly to appear that the nature and effect are understood by the accused. In such a case the preliminary investigation of a grand jury, with the admission of the accusation, the indictment, is supposed to be a sufficient safe-guard to the public interests."

The above decision most clearly declares the law governing a case where a fundamental right of the citizen is to be affected by a criminal proceeding, such right being one regulating the method of that proceeding. Mr. Blackstone (4 Comm. 189) says: "The king has an interest in the preservation of all his subjects." In this country the state and the law have such a great interest in the life and liberty of the citizen as to see to it that such life or liberty shall not be taken away, even with the consent of the citizen, in violation of one of the great constitutional fundamental requisites regulating the method to be adopted to deprive the citizen of his life or his liberty. Mr. Blackstone (1 Comm.

133) again declares that the "natural life, being an immediate donation of the Great Creator, cannot legally be disposed of or destroyed by any individual, neither by the person himself nor by any other of his fellow-creatures, merely upon their own authority." So it is with the liberty of the citizen. It is a donation of the Great Creator, and cannot be taken by persons upon their own authority, even with the consent of the citizen, whose liberty is taken; but it must be taken by due process of law. None of the fundamental requisites to the proceeding, which make up due process of law, can be so waived as to deprive the person whose liberty is taken from him of afterwards resorting to legal means to obtain his liberty. In such a case as the one charged against these petitioners, the fundamental law of the land—the constitution of the United States —requires that the charge be preferred by an indictment found by a legal grand jury. The infirmity in the proceeding, which resulted in their being sentenced to prison, is that the proceeding is one against the constitution and laws of the United States; one unknown to such laws; one created by the mere voluntary act of the parties; and it is, in effect, an attempt to adopt a species of arbitration to settle the question whether the petitioners have been guilty of offenses against the United States. This is not the way to ascertain this fact. From the principles of this law which I have set out, as well as the reasons for these principles, which I think are sustained by all the authorities which declare the law on the subject, these petitioners could not be legally deprived of their liberty by their pleading guilty to the charge of larceny preferred by an information, and by so doing they did not deprive themselves of the right to regain their liberty by *habeas corpus*. It must, therefore, be held that they are restrained of their liberty without due process of law, and against the constitution and laws of the United States. Therefore the writ must issue, and the parties are entitled to a discharge by it from custody.